IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THERESA CAMPBELL, individually and as administrator of the Estate of Brandon William Campbell, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Civil Action File |
| vs. | ) ) | No. 0:24-cv-05966-JFA-PJG |
| Myrtle Beach Police Department; Horry County Sheriff's Office; Horry County; City of Myrtle Beach; Myrtle Beach Jail; Myrtle Beach (detention center) operated by Horry County; John Does 1-10; Amy Prock; Brian Murphy; Seabrook Phillips; Justin R. Falco; Zackary A. White; Kelly B. Brewer; Albert Clay Fletcher; Michael M. Nissan; Nickolas R. Porzio Heard; Heather A. Mitchell; and Christine M. Yencha, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**COMPLAINT**

Theresa Campbell, administrator of the Estate of Brandon William Campbell ("Campbell"), brings claims under 42 U.S.C. § 1983 for Defendants' deliberate indifference to Campbell's serious medical needs on October 26, 2022, which led to Campbell's death while incarcerated at the Myrtle Beach Police Department ("MBPD") Jail ("MBPD Jail" or the "Jail").

1

## INTRODUCTION

John Doe 1-10 are as yet unknown state actors.

1.      On October 19, 2022, officers of the Myrtle Beach Police Department found Campbell unconscious and unresponsive to verbal calls.

2.      Rather than seeking or providing medical aid, the officers brought Campbell to Myrtle Beach Police Department Jail. Officers at the Jail knew that Campbell had consumed an amount of alcohol sufficient to cause a serious medical need that put Campbell at risk of death. They noted in their files that Campbell presented a medical risk and required observation, and they then disregarded the risk, placing Campbell into a holding cell with other inmates. Campbell was found in the holding cell without a pulse after being denied medical care for over five hours. Defendants' deliberate indifference to Campbell's serious medical need caused Campbell's death.

### The Parties, Jurisdiction & Venue

3.      Plaintiff Theresa Campbell is the court-appointed administrator of the Estate of Brandon William Campbell, deceased.

4.      Defendant Amy Prock is a resident of South Carolina.

5.      Defendant Brian Murphy is a resident of South Carolina.

6.      Defendant Seabrook Phillips is a resident of South Carolina.

7.      Defendant Justin R. Falco is a resident of South Carolina.

8.      Defendant Zackary A. White is a resident of South Carolina.

9.      Defendant Kelly B. Brewer is a resident of South Carolina.

10.      Defendant Albert Clay Fletcher is a resident of South Carolina.

11.      Defendant Michael M. Nissan is a resident of South Carolina.

12.      Defendant Nickolas R. Porzio Heard is a resident of South Carolina.

13.      Defendant Heather A. Mitchell is a resident of South Carolina.

2

14.    Defendant Christine M. Yencha is a resident of South Carolina.

15.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the events and omissions giving rise to Plaintiff's claim occurred in Horry County, which is within this Court's judicial district.

**FACTS**

*Overview*

17.    At approximately 6:30 p.m. on October 19, 2022, Defendants Falco and White of the MBPD found Campbell unconscious in the grass at a park with an obvious odor of alcohol.

18.    When Defendants Falco and White found Campbell unconscious in the grass, Campbell was in a far worse state than other intoxicated individuals that officers of the MBPD typically interact with[1].

19.    Defendant Falco woke Campbell by application of a sternum rub, which is meant to wake an unconscious individual through the infliction of sharp pain.

20.     Defendant Falco noted in his Arrest Report that Campbell was "passed out."

21.    Defendant Falco further noted that Campbell "had difficulty standing on his own."

22.    Defendant Falco further noted that Campbell "was not able to care for himself in his condition,"

---

[1] The MBPD has refused to provide body cam footage of Campbell's arrest, which would show Campbell's state when he was arrested.

23.    Defendant Falco told an investigator that he believed that Mr. Campbell may have been suffering from an overdose, which distinguished him from the multitude of drug and alcohol abusers the police encounter.

24.    Defendant Falco also noted in his Arrest Report that Campbell stated that he had consumed "7 Steel Reserves"

25.    Consumption of seven Steel Reserves—a malt liquor commonly sold in 42-ounce containers and containing an especially high ABV (the level of "alcohol by volume")—will raise any adult male's blood-alcohol level to potentially fatal levels.

26.    Defendants Falco and White knew that Campbell's consumption of "7 Steel Reserves," which was a much higher level of alcohol consumption than typical individuals arrested for public intoxication, created a serious medical need requiring prompt medical attention.

27.    Because of Campbell's obvious intoxicated state, SOP S-146 required Defendants Falco and White to transport Campbell for medical attention before allowing him to be placed into the MBPD Jail.

28.    Because of Campbell's obvious intoxicated state, SOP S-146 required written confirmation from a medical authority that Campbell was medically fit for placement in the MBPD Jail.

29.    Because of Campbell's obvious intoxicated state, SOP S-146 required written confirmation from a medical authority that placement of Campbell into the MBPD Jail did not pose a danger to Campbell.

30.    Rather than complying with SOP S-146, Defendant Falco transported Campbell for placement into the MBPD Jail.

31.    Rather than rendering aid or taking Campbell for medical treatment, Defendant Falco transported Campbell to the MBPD Jail.

4

32.     During booking at the MBPD Jail, the booking officers, including Defendants Mitchell and Nissan, learned that Campbell had consumed seven (7) "Steel Reserves."

33.     The Booking Report for Campbell states, "Jail Alerts: Medical Alert, Observation," indicating that Campbell was not to be treated like the multitude of drug and alcohol abusers the MPBD routinely encounters.

34.     Officers and personnel at MBPD had actual knowledge, based on objective evidence, that Campbell had a medical condition that was required to be communicated to other jail employees, and that made observation medically necessary.

35.     With actual knowledge of Campbell's serious medical condition, Defendants were required to have a medical professional examine Campbell.

36.     Because Campbell's serious medical condition necessitated alerting  jail employees to his condition, Defendants were required to have a medical professional examine Campbell.

37.     Because Campbell's serious medical condition necessitated the observation of Campbell, Defendants were required to have a medical professional examine Campbell.

38.     MBPD's Standard Operating Procedure (SOP) S-146 required that individuals such as Campbell with medical issues shall "be examined by an EMT prior to being admitted to the facility."

39.     Despite the known medical issues of Campbell and the clear MBPD policy, Defendants did not have Campbell examined by an EMT prior to admission.

40.    Despite the known medical issues of Campbell and the clear MBPD policy, Defendants did not have any other medical professional examine[2] Campbell prior to admission.

41.    Defendant Mitchell is not a medical professional.

42.    On October 19, 2022, Defendant Mitchell was not competent to conduct a medical examination of any person.

43.    On October 19, 2022, Defendant Mitchell was not qualified to conduct a medical examination of any person.

44.    On October 19, 2022, Defendant Mitchell was not competent to perform a medical screening of Campbell.

45.    On October 19, 2022, Defendant Mitchell was not qualified to perform a medical screening of Campbell.

46.    Despite actual knowledge of Campbell's serious medical condition, Defendants did not provide any medical aid to Campbell.

47.    Contrary to MBPD policies, Defendants did not provide any medical aid to Campbell.

48.    Despite actual knowledge of Campbell's serious medical condition that necessitated observation, Defendants did not institute regular observation of Campbell.

49.    Contrary to MBPD policies, Defendants did not institute any regular observation of Campbell.

---

[2] MBPD and Defendants have refused to provide—in response to public record requests—complete and unredacted copies of the purported medical screen of Campbell. The heavily redacted medical screen provided is unsigned and was never reviewed by a nurse or other medical personnel.

50.     Defendants' failure to secure medical assistance for Campbell violated MBPD SOP S-146, which required that persons brought into the facility with medical conditions be transported for medical attention.

51.     Defendants' failure to secure medical assistance for Campbell violated MBPD SOP S-146, which required written confirmation from a medical authority that the prisoner is in no danger of harm.

52.     Defendants' failure to secure medical assistance for Campbell violated MBPD SOP S-146, which required Campbell to be medically fit for placement in jail.

53.     Instead, Campbell was placed in a holding cell with other prisoners.

54.     While in the holding cell, Campbell was lethargic.

55.     While in the holding cell, Campbell was inactive.

56.     After five (5) hours in the holding cell, Campbell died there with a blood alcohol level of 0.34 percent at the time of his death.

57.     Defendants' conduct violated Campbell's clearly established right as a pretrial detainee to be free from any form of punishment, a right which required that Defendants not be deliberately indifferent to his serious medical need.

58.     Defendants' deliberate indifference to the risk that a high level of alcohol consumption could be fatal, and to Campbell's serious medical need, caused Campbell's death.

### *The Myrtle Beach Police Department Jail*

59.     The Myrtle Beach Police Department operates the MBPD Jail.

60.     The MBPD Jail is adjacent to the MBPD's main police headquarters.

61.     On September 19, 2022, the conduct of officers at the MBPD Jail was governed by the MBPD Standard Operating Procedures then in effect (SOPs).

62.    SOP S-108 requires:

> Before assignment to detention duties, all detention personnel will complete a pre-service course of not less than (16) hours of training" on "Required Topics" including ""Handling intoxicated persons."

63.    Contrary to SOP S-108, not all detention personnel working at the MBPD Jail received training on handling intoxicated persons.

64.    Defendant Mitchell did not receive training on handling intoxicated persons.

65.    Defendant Yencha did not receive training on handling intoxicated persons.

66.    SOP S-146 states the following policy relating to the "Acceptance of sick or injured prisoners":

> 1.   When persons are brought into this facility to be booked/detained and are believed to be sick or injured the following procedures will apply:
>
> 2.   Prisoners will not be booked or admitted to this facility until they have been transported by the arresting officer for medical attention and the shift supervisor has received written confirmation from medical authority that the prisoner is in no danger and is medically fit to be placed in jail. The detention officer shall complete an MBPD Inmate Medical Report and attach such confirmation thereto.
>
> 3.   If arrested by an officer of this department: Prisoner will be examined by an EMT prior to being admitted to the facility. Should it be deemed necessary by an EMT that the prisoner be transported for additional medical assistance, it will be provided before he/she is admitted to this facility. After medical assistance has been rendered the prisoner may be booked into this facility. The duty detention supervisor shall complete an MBPD Inmate Medical Report and attach any medical paperwork/instructions to the report. If the inmate is complaining of a sickness or injury, or if the detention officer believes medical attention is necessary, EMS will be notified.

67.    Defendants knew that Campbell was acutely intoxicated when arrested.

68.    Defendants knew that Campbell was acutely intoxicated when he arrived at the MBPD Jai.

69.    As a result of his acute alcohol intoxication, Campbell was visibly sick when he arrived at the MBPD Jail.

70.     As a result of his acute alcohol intoxication, when he arrived at the MBPD Jail Campbell obviously needed prompt professional medical attention.

71.     As a result of his acute alcohol intoxication, when he arrived at the MBPD Jail Campbell obviously needed prompt professional medical treatment.

72.     Because of Campbell's apparent acute intoxication, SOP S-146 required

73.     Campbell was arrested by "an officer of [the MBPD]," triggering the requirements of SOP S-146.

74.     Contrary to SOP S-146, Defendants did not have Campbell transported for medical attention prior to his placement into MBPD Jail.

75.     Contrary to SOP S-146, prior to Campbell's placement into MBPD Jail, Defendants did not receive any confirmation, written or otherwise, from any medical authority that Campbell was in no danger.

76.     Contrary to SOP S-146, prior to Campbell's placement into MBPD Jail, Defendants did not receive any confirmation, written or otherwise, from any medical authority that Campbell was medically fit to be placed into the MBPD Jail.

77.     Contrary to SOP S-146, Defendants did not have an EMT examine Campbell before his admission to the Jail.

78.     Contrary to SOP S-146, no detention officer completed an MBPD Inmate Medical Report on Campbell.

79.     SOP S-146 requires that "[w]henever a prisoner in a sick or injured condition is booked into this facility, (after medical attention), a notation of the illness/injury shall be documented in the notes section of JMS."

80.    Campbell's Booking Report contains notations stating that Campbell was on "Medical" and "Observation" alerts.

81.    SOP S-146 further requires that:

1. The inmate will be housed in an observation/medical cell. Additional medical assistance will be provided if there is any indication that the inmate is in danger.

2. The inmate will be checked every thirty (30) minutes to ensure he/she is in a conscious state. If there is any indication that the inmate is unconscious or in need of additional medical assistance it will be requested immediately.

3. All possible actions will be taken by the detention staff to safeguard the life and health of the inmate.

82.    Mr. Campell was identified by the jail as having a medical condition requiring application of SOP S-146.

83.    Contrary to SOP S-146, Campbell was not housed in an "observation/medical cell."

84.    Contrary to SOP S-146, Defendants did not "check" on Campbell every thirty (30) minutes to ensure he was in a conscious state.

85.    Contrary to SOP S-146, Defendants did not "check" on Campbell every thirty (30) minutes to ensure he did not need medical assistance.

### *Defendant Falco*

86.    On October 19, 2022, at around 6:30 p.m., Defendant Falco of the Myrtle Beach Police Department arrested Campbell for public intoxication.

87.    When Defendant Falco first saw Campbell, he was passed out in the grass at a park.

88.    When Defendant Falco first saw Campbell, he did not respond to verbal calls to wake up.

89.    When Defendant Falco first saw Campbell, he did not respond when Defendant White made physical contact to Campbell's foot.

90.     When Defendant Falco first saw Campbell, Falco believed that Mr. Cambell had overdosed.

91.     Defendant Falco performed a sternum rub on Campbell, which inflicts sharp pain on the recipient which is designed to wake an unconscious individual.

92.     After Defendant Falco performed the sternum rub on Campbell, he

93.     Defendant Falco observed that Campbell "had difficulty standing on his own."

94.     Defendant Falco observed that Campbell "had slurred speech."

95.     Defendant Falco knew Campbell had consumed "7 Steel Reserves."

96.     Defendant Falco knew that Campbell "was not able to care for himself in his condition."

97.     Defendant Falco wrote down his observations in an Arrest Report.

98.     Defendant Falco knew that Campbell had consumed an amount of alcohol that caused him to pass out.

99.     Defendant Falco knew that Campbell had consumed an amount of alcohol that made him unable to stand on his own.

100.    Defendant Falco knew that Campbell had consumed an amount of alcohol that could be life-threatening.

101.    Defendant Falco knew that Campbell had a serious medical need.

102.    Defendant Falco did not transport Campbell for medical assistance.

103.    Defendant Falco transported Campbell to the Jail.

104.    Contrary to SOP-146, Defendant Falco did not transport Campbell for medical attention.

105.    Contrary to SOP-146, Defendant Falco did not provide written confirmation from a medical authority that Campbell was in no danger and was medically fit to be placed in the Jail.

106.    Defendant Falco knew from his observations of Campbell that Campbell had a serious medical need.

107.    Defendant Falco knew from his interactions with Campbell that Campbell had a serious medical need.

108.    Defendant Falco intentionally failed to seek medical assistance for Campbell.

109.    Defendant Falco's conduct was not objectively reasonable in the circumstances.

110.    Defendant Falco's failure to seek medical assistance for Campbell showed his deliberate indifference to Campbell's serious medical need.

111.    Defendant Falco's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant White*

112.    On October 19, 2022, at around 6:30 p.m., Defendant White of the Myrtle Beach Police Department arrested Campbell for public intoxication.

113.    When Defendant White first saw Campbell, he was passed out in the grass at a park.

114.    When Defendant White first saw Campbell, he did not respond to verbal calls to wake up.

115.    When Defendant White first saw Campbell, he did not respond when Defendant White made physical contact to Campbell's foot.

116.    When Defendant White first saw Campbell, White believed that Mr. Cambell had overdosed.

117.    Defendant White performed a sternum rub on Campbell, which inflicts sharp pain on the recipient which is designed to wake an unconscious individual.

118.    After Defendant White performed the sternum rub on Campbell, he

119.    Defendant White observed that Campbell "had difficulty standing on his own."

120.    Defendant White observed that Campbell "had slurred speech."

121.    Defendant White knew Campbell had consumed "7 Steel Reserves."

122.    Defendant White knew that Campbell "was not able to care for himself in his condition."

123.    Defendant White wrote down his observations in an Arrest Report.

124.    Defendant White knew that Campbell had consumed an amount of alcohol that caused him to pass out.

125.    Defendant White knew that Campbell had consumed an amount of alcohol that made him unable to stand on his own.

126.    Defendant White knew that Campbell had consumed an amount of alcohol that could be life-threatening.

127.    Defendant White knew that Campbell had a serious medical need.

128.    Defendant White did not transport Campbell for medical assistance.

129.    Defendant White transported Campbell to the Jail.

130.    Contrary to SOP-146, Defendant White did not transport Campbell for medical attention.

131.    Contrary to SOP-146, Defendant White did not provide written confirmation from a medical authority that Campbell was in no danger and was medically fit to be placed in the Jail.

132.    Defendant White knew from his observations of Campbell that Campbell had a serious medical need.

133.    Defendant White knew from his interactions with Campbell that Campbell had a serious medical need.

134.    Defendant White intentionally failed to seek medical assistance for Campbell.

135.    Defendant White's conduct was not objectively reasonable in the circumstances.

136.   Defendant White's failure to seek medical assistance for Campbell showed his deliberate indifference to Campbell's serious medical need.

137.   Defendant White's deliberate indifference to Campbell's serious medical need caused Campbell's death.

138.   Defendant White knew that Campbell had consumed enough alcohol to render Campbell unconscious.

139.   Defendant White knew that Campbell had consumed an amount of alcohol that made him unable to stand on his own.

140.   Defendant White knew that Campbell had consumed an amount of alcohol that could be life-threatening.

141.   Defendant White knew that Campbell had a serious medical need.

142.   Despite knowledge of Campbell's condition, Defendant Falco did not transport Campbell for medical attention.

143.   In failing to transport Campbell for medical attention, Defendant Falco violated MBPD SOP S-146.

144.   Despite knowledge of Campbell's condition Defendant White did seek written confirmation from a medical authority that Campbell was in no danger.

145.   Despite knowledge of Campbell's condition Defendant White did seek written confirmation from a medical authority that Campbell medically fit to be placed in the Jail.

146.   In failing to obtain written confirmation from a medical authority that Campbell was in no danger, Defendant White violated MBPD SOP S-146.

147.   In failing to obtain written confirmation from a medical authority that Campbell was medically fit to be placed into the MBPD Jail, Defendant White violated MBPD SOP S-146.

148.    Defendant White assisted Defendant Falco with transporting Campbell to the Jail.

149.    Defendant White knew from his observations of Campbell that Campbell had a serious medical need.

150.    Defendant White knew from his interactions with Campbell that Campbell had a serious medical need.

151.    Defendant White intentionally failed to seek medical assistance for Campbell.

152.    Defendant White's conduct was not objectively reasonable in the circumstances.

153.    Defendant White's failure to seek medical assistance for Campbell showed his deliberate indifference to Campbell's serious medical need.

154.    Defendant White's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### Defendant Nissan

155.    Defendant Nissan was a Detention Officer at the MBPD Jail on October 19, 2022.

156.    Defendant Nissan met Defendant Falco and Campbell at the entrance to the Jail.

157.    Defendant Nissan escorted Campbell to the booking desk.

158.    Contrary to SOP S—146, Defendant Nissan admitted Campbell without receiving "written confirmation from medical authority that the prisoner is in no danger and is medically fit to be placed in jail."

159.    Contrary to SOP S—146, Defendant Nissan accepted Campbell into the MBPD Jail before he was "examined by an EMT."

160.    Contrary to SOP S—146, Defendant Nissan did not "complete an MBPD Inmate Medical Report" for Campbell.

161.    Defendant Nissan searched Campbell.

162.    Defendant Nissan fingerprinted Campbell.

163.    Defendant Nissan knew the circumstances of Campbell's arrest.

164.    Defendant Nissan knew that Campbell was "passed out" at the time of his arrest.

165.    Defendant Nissan knew that Campbell could not stand on his own.

166.    Defendant Nissan knew that Campbell's Booking Report showed an alert for "Medical Alert."

167.    Defendant Nissan knew that Campbell's Booking Report showed an alert for "Observation."

168.    Campbell communicated to Defendant Nissan that he had drunk seven Steel Reserves.

169.    Defendant Nissan knew that Campbell had consumed an amount of alcohol that seriously impaired his movement.

170.    Defendant Nissan knew that Campbell had consumed an amount of alcohol that could be life-threatening.

171.    Defendant Nissan directly observed Campbell.

172.    Defendant Nissan directly interacted with Campbell.

173.    Defendant Nissan knew that Mc. Campbell could not walk without assistance.

174.    Defendant Nissan observed that Campbell had "slow movement" and "slurred speech."

175.    Defendant Nissan escorted Campbell through a long hallway to the holding cell.

176.    Defendant Nissan knew from his observations of Campbell that Campbell had a serious medical need.

177.    Defendant Nissan knew from his interactions with Campbell that Campbell had a serious medical need.

178.    Defendant Nissan knew from his knowledge of the circumstances of Campbell's arrest that Campbell had a serious medical need.

179.    Defendant Nissan knew from Campbell's Booking Report that Campbell had a serious medical need.

180.    Defendant Nissan did not seek medical attention for Campbell.

181.    Defendant Nissan intentionally failed to seek medical assistance for Campbell.

182.    Defendant Nissan's response to Campbell's medical need was not objectively reasonable.

183.    Defendant Nissan's failure to seek medical attention shows his deliberate indifference to Campbell's serious medical need.

184.    Defendant Nissan's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant Mitchell*

185.    Defendant Mitchell was a booking clerk at the MBPD Jail on October 19, 2022.

186.    Defendant Mitchell never received any law enforcement training.

187.    Contrary to the requirements of SOP S-108, Defendant Mitchell did not receive training on handling intoxicated persons.

188.    Defendant Mitchell was responsible for booking Campbell into the Jail.

189.    Contrary to SOP S-146, Defendant Mitchell admitted Campbell without receiving "written confirmation from medical authority that the prisoner is in no danger and is medically fit to be placed in jail."

190.    Contrary to SOP S-146, Defendant Mitchell accepted Campbell into the MBPD Jail before he was "examined by an EMT."

191.    Defendant Mitchell attempted to complete a Jail Screen Medical Report for Campbell.

17

192.     Defendant Mitchell left the Jail Screen Medical Report unsigned and unreviewed by any medical personnel.

193.     Defendant Mitchell completed a Booking Report for Campbell.

194.     The Booking Report indicates that Campbell had been arrested for "Public Intoxication/Impairment."

195.     The Booking Report contains an Alert for "Medical Alert."

196.     The Booking Report's "Jail Alerts" section indicated a need for "Observation"

197.     Defendant Mitchell did not alert any medical professional about Campbell's condition.

198.     Defendant Mitchell did not place Campbell into an observation cell.

199.     Defendant Mitchell did not continue to observe Campbell.

200.     Defendant Mitchell knew the circumstances of Campbell's arrest.

201.     Defendant Mitchell knew that Campbell was "passed out" at the time of his arrest.

202.     Defendant Mitchell knew that Campbell could not stand on his own.

203.     Defendant Mitchell knew that Mr. Cambell had stated that he had drunk "seven Steel Reserves."

204.     Defendant Mitchell knew that Campbell had consumed an amount of alcohol that seriously impaired his movement.

205.     Defendant Mitchell knew that Campbell had consumed an amount of alcohol that could be life-threatening.

206.     During the booking process, Defendant Mitchell directly observed Campbell.

207.     During the booking process, Defendant Mitchell directly interacted with Campbell.

208.     Defendant Mitchell did not ensure that other officers in the Jail would continually observe Campbell.

209.    Defendant Mitchell assigned or placed Campbell in a cell in the back of the Jail.

210.    Defendant Mitchell did not directly observe Campbell for the remainder of the evening.

211.    Defendant Mitchell knew from his observations of Campbell that Campbell had a serious medical need.

212.    Defendant Mitchell knew from her interactions with Campbell that Campbell had a serious medical need.

213.    Defendant Mitchell knew from her knowledge of the circumstances of Campbell's arrest that Campbell had a serious medical need.

214.    Defendant Mitchell intentionally failed to seek medical assistance for Campbell.

215.    Defendant Mitchell's response to Campbell's medical need was not objectively reasonable.

216.    Defendant Mitchell's failure to seek medical attention shows her deliberate indifference to Campbell's serious medical need.

217.    Defendant Mitchell's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant Porzio Heard*

218.    On October 19, 2022, Defendant Porzio Heard was working as an officer in the MBPD Jail.

219.    Defendant Porzio Heard assisted Defendant Mitchell with booking Campbell into the Jail.

220.    Defendant Porzio Heard assisted Defendant Nissan as Defendant Nissan performed a search of Campbell.

221.    Defendant Porzio Heard knew the circumstances of Campbell's arrest.

222.    Defendant Porzio Heard knew that Campbell was "passed out" at the time of his arrest.

223.    Defendant Porzio Heard knew that Campbell could not stand on his own.

19

224.   Defendant Porzio Heard knew that Mr. Cambell had stated that he had drunk "seven Steel Reserves."

225.   Defendant Porzio Heard knew that Campbell had consumed an amount of alcohol that seriously impaired his movement.

226.   Defendant Porzio Heard knew that Campbell had consumed an amount of alcohol that could be life-threatening.

227.   Defendant Porzio Heard knew that the Booking Report's "Jail Alerts" section contained a "Medical Alert."

228.   Defendant Porzio Heard knew that the Booking Report's "Jail Alerts" section indicated a need for "Observation"

229.   Defendant Porzio Heard did not alert any medical professional about Campbell's condition.

230.   Defendant Porzio Heard did not seek medical care for Campbell.

231.   Defendant Porzio Heard did not place Campbell into an observation cell.

232.   Defendant Porzio Heard did not observe Campbell.

233.   Defendant Porzio Heard did ensure that other officers in the Jail would continually observe Campbell.

234.   Defendant Porzio Heard assisted Defendant Nissan with escorting Mr. Cambell to a holding cell in the back of the Jail.

235.   Defendant Porzio Heard did not observe Campbell for the remainder of the evening.

236.   During the booking process, Defendant Porzio Heard observed Campbell.

237.   During the booking process, Defendant Porzio Heard interacted with Campbell.

238.   Defendant Porzio Heard knew from his observations of Campbell that Campbell had a serious medical need.

239.    Defendant Porzio Heard knew from his interactions with Campbell that Campbell had a serious medical need.

240.    Defendant Porzio Heard knew from his knowledge of the circumstances of Campbell's arrest that Campbell had a serious medical need.

241.    Defendant Porzio Heard knew from the Booking Report that Campbell had a serious medical need.

242.    Defendant Porzio Heard's response to Campbell's serious medical need was not objectively reasonable.

243.    Defendant Porzio Heard's failure to seek medical attention shows his deliberate indifference to Campbell's serious medical need.

244.    Defendant Porzio Heard's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant Fletcher*

245.    Defendant Fletcher was a Detention Officer at the MBPD Jail on October 19, 2022.

246.    Defendant Fletcher was Head Jailer at the MBPD Jail on October 19, 2022.

247.    Defendant Fletcher knew the circumstances of Campbell's arrest.

248.    Defendant Fletcher knew that at the time of his arrest, Campbell was "passed out".

249.    Defendant Fletcher knew that at the time of his arrest, Campbell could not stand on his own.

250.    Defendant Fletcher knew that at the time of his arrest, Mr. Cambell had stated that he had drunk "seven Steel Reserves."

251.    Defendant Fletcher knew that Campbell had consumed an amount of alcohol that seriously impaired his movement.

252.    Defendant Fletcher knew that Campbell had consumed an amount of alcohol that could be life-threatening.

253.    Defendant Fletcher knew that the Booking Report's "Jail Alerts" section contained a "Medical Alert."

254.    Defendant Fletcher knew that the Booking Report's "Jail Alerts" section indicated a need for "Observation."

255.    Defendant Fletcher did not alert any medical professional about Campbell's condition.

256.    Defendant Fletcher did not seek medical care for Campbell.

257.    Defendant Fletcher did not place Campbell into an observation cell.

258.    Defendant Fletcher did not ensure that other officers in the Jail would continually observe Campbell.

259.    Defendant Fletcher was responsible for performing periodic checks of all prisoners in the Jail.

260.    Defendant Fletcher performed periodic checks on all inmates in the Jail.

261.    Defendant Fletcher observed Campbell in his cell.

262.    Defendant Fletcher observed Campbell lying down in his cell.

263.    Defendant Fletcher brought cups of water to Campbell.

264.    Defendant Fletcher knew, from his knowledge of the circumstances of Campbell's arrest, that Campbell had a serious medical need.

265.    Defendant Fletcher knew from the Booking Report that Campbell had a serious medical need.

266.    Defendant Fletcher knew from his observation of Campbell that Campbell had a serious medical need.

267.    Defendant Fletcher knew from his interaction with Campbell that Campbell had a serious medical need.

268.    Defendant Fletcher intentionally failed to seek medical assistance for Campbell.

269.    Defendant Fletcher's response to Campbell's serious medical need was not objectively reasonable.

270.    Defendant Fletcher's failure to seek medical attention shows his deliberate indifference to Campbell's serious medical need.

271.    Defendant Fletcher's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant Brewer*

272.    Defendant Brewer was a Detention Officer at the MBPD Jail on October 19, 2022.

273.    Defendant Brewer knew the circumstances of Campbell's arrest.

274.    Defendant Brewer knew that at the time of his arrest, Campbell was "passed out."

275.    Defendant Brewer knew that at the time of his arrest, Campbell could not stand on his own.

276.    Defendant Brewer knew that at the time of his arrest, Mr. Cambell had stated that he had drunk "seven Steel Reserves."

277.    Defendant Brewer knew that Campbell had consumed an amount of alcohol that seriously impaired his movement.

278.    Defendant Brewer knew that Campbell had consumed an amount of alcohol that could be life-threatening.

279.    Defendant Brewer knew that the Booking Report's "Jail Alerts" section contained a "Medical Alert."

280.    Defendant Brewer knew that the Booking Report's "Jail Alerts" section indicated a need for "Observation."

281.    Defendant Brewer did not alert any medical professional about Campbell's condition.

282.    Defendant Brewer did not seek medical care for Campbell.

283.    Defendant Brewer did not place Campbell into an observation cell.

284.    Defendant Brewer did not ensure that other officers in the Jail would continually observe Campbell.

285.    Defendant Brewer knew, from his knowledge of the circumstances of Campbell's arrest, that Campbell had a serious medical need.

286.    Defendant Brewer knew from the Booking Report that Campbell had a serious medical need.

287.    Defendant Brewer knew from his observation of Campbell that Campbell had a serious medical need.

288.    Defendant Brewer intentionally failed to provide medical care to Campbell.

289.    Defendant Brewer's response to Campbell's serious medical need was not objectively reasonable.

290.    Defendant Brewer's failure to seek medical attention shows his deliberate indifference to Campbell's serious medical need.

291.    Defendant Brewer's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant Yencha*

292.    Defendant Yencha worked at the MBPD Jail on October 19, 2022.

293.    Defendant Yencha never received any law enforcement training.

24

294.    In spite of SOP S-108, Defendant Yencha never received any training relating to the handling of severely intoxicated individuals.

295.    Defendant Yencha knew the circumstances of Campbell's arrest.

296.    Defendant Yencha knew that at the time of his arrest, Campbell was "passed out."

297.    Defendant Yencha knew that at the time of his arrest, Campbell could not stand on his own.

298.    Defendant Yencha knew that at the time of his arrest, Mr. Cambell had stated that he had drunk "seven Steel Reserves."

299.    Defendant Yencha knew that Campbell had consumed an amount of alcohol that seriously impaired his movement.

300.    Defendant Yencha knew that Campbell had consumed an amount of alcohol that could be life-threatening.

301.    Defendant Yencha knew that the Booking Report's "Jail Alerts" section contained a "Medical Alert."

302.    Defendant Yencha knew that the Booking Report's "Jail Alerts" section indicated a need for "Observation"

303.    Defendant Yencha did not alert any medical professional about Campbell's condition.

304.    Defendant Yencha did not seek medical care for Campbell.

305.    Defendant Yencha did not place Campbell into an observation cell.

306.    Defendant Yencha did not ensure that other officers in the Jail would continually observe Campbell.

307.    Defendant Yencha knew, from her knowledge of the circumstances of Campbell's arrest, that Campbell had a serious medical need.

308.   Defendant Yencha knew from the Booking Report that Campbell had a serious medical need.

309.   Defendant Yencha knew from her observation of Campbell that Campbell had a serious medical need.

310.   Defendant Yencha intentionally failed to provide medical care to Campbell.

311.   Defendant Yencha's response to Campbell's serious medical need was not objectively reasonable.

312.   Defendant Yencha's failure to seek medical attention shows her deliberate indifference to Campbell's serious medical need.

313.   Defendant Yencha's deliberate indifference to Campbell's serious medical need caused Campbell's death.

### *Defendant Phillips*

314.   On October 19, 2022, Defendant Phillips was a Lieutenant with the MBPD.

315.   Defendant Phillips was responsible for supervision of all individuals who worked at the Myrtle Beach Police Department Jail.

316.   Defendant Phillips failed to ensure that all individuals working at the MBPD Jail received training in handling severely intoxicated individuals.

317.   Defendant Phillips failed to ensure that all individuals working at the MBPD Jail were trained to recognize signs that an intoxicated person needed medical help.

318.   Defendant Phillips failed to ensure that individuals working at the MBPD Jail were trained to refer individuals with serious medical needs for medical care.

319.   Defendant Phillips was responsible for ensuring that all individuals working at the MBPD Jail followed MBPD policies.

320.    Defendant Phillips was responsible for ensuring that all individuals working at the MBPD Jail followed MBPD procedures.

321.    Defendant Phillips was responsible for all customs at the MBPD Jail.

322.    Defendant Phillips was deliberately indifferent to the risk that failures in training would lead to the violation of inmate's rights to medical care.

323.    Defendant Phillips was deliberately indifferent to the risk that the customs of the MBPD Jail would lead to the violation of inmates' rights to medical care.

324.    Defendant Phillips's deliberate indifference to the risk that inmates' rights would be violated caused the death of Campbell.

### *Defendant Murphy*

325.    On October 19, 2022, Defendant Murphy was a Captain with the MBPD.

326.    Defendant Murphy was in charge with supervision of all detention officers of the Myrtle Beach Police Department Jail.

327.    Defendant Murphy failed to ensure that all individuals working at the MBPD Jail received training in handling severely intoxicated individuals.

328.    Defendant Murphy failed to ensure that all individuals working at the MBPD Jail were trained to recognize signs that an intoxicated person needed medical help.

329.    Defendant Murphy failed to ensure that all individuals working at the MBPD Jail were trained to refer individuals with serious medical needs for medical care.

330.    Defendant Murphy was responsible for ensuring that individuals working at the MBPD Jail followed MBPD policies.

331.    Defendant Murphy was responsible for ensuring that individuals working at the MBPD Jail followed MBPD procedures.

332.    Defendant Murphy was responsible for all customs at the MBPD Jail.

333.    Defendant Murphy was deliberately indifferent to the risk that failures in training would lead to the violation of inmate's rights to medical care.

334.    Defendant Murphy was deliberately indifferent to the risk that the customs of the MBPD Jail would lead to the violation of inmate's rights to medical care.

335.    Defendant Murphy's deliberate indifference to the risk that inmates' rights would be violated caused the death of Campbell.

### *Defendant Prock*

336.    On October 19, 2022, Defendant Prock was Police Chief for the MBPD.

337.    Prior to October 19, 2022, Defendant Prock was responsible for developing Policies and Procedures governing the MBPD.

338.    Prior to October 19, 2022, Defendant Prock was responsible for approving all Policies and Procedures governing the MBPD.

339.    Prior to October 19, 2022, Defendant Prock was responsible for all customs of the MBPD.

340.    Prior to October 19, 2022, Defendant Prock was responsible for all customs at the MBPD Jail.

341.    Prior to October 19, 2022, Defendant Prock did not promulgate any policy governing the handling of severely intoxicated individuals at the MBPD Jail.

342.    Defendant Prock failed to ensure that all MBPD employees at the MBPD Jail received training in handling severely intoxicated individuals.

343.    Defendant Prock failed to ensure that all individuals working at the MBPD Jail were trained to recognize signs that an intoxicated person needed medical help.

344.    Defendant Prock failed to ensure that all individuals working at the MBPD Jail were trained to refer individuals with serious medical needs for medical care.

345.    Defendant Prock was responsible for ensuring that officers at the MBPD Jail followed MBPD policies.

346.    Defendant Prock was responsible for ensuring that officers at the MBPD Jail followed MBPD procedures.

347.    Defendant Prock was responsible for all customs at the MBPD Jail.

348.    Defendant Prock was deliberately indifferent to the risk that failures in training would lead to the violation of inmate's rights to medical care.

349.    Defendant Prock was deliberately indifferent to the risk that the customs of the MBPD Jail would lead to the violation of inmate's rights to medical care.

350.    Defendant Prock's deliberate indifference to the risk that inmates' rights would be violated caused the death of Campbell.

**COUNT ONE: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)**
**Against Defendant Justin Falco**

351.    This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

352.    This count is brought against Defendant Falco solely in his individual capacity.

353.    At all times relevant, Defendant Falco was employed by the Myrtle Beach Police Department.

354.    At all times relevant, Defendant Falco acted under color of state law.

355.    Through his observations of and interactions with Campbell, Defendant Falco knew that Campbell had consumed an amount of alcohol that caused a serious medical need.

356. Through his observations of and interactions with Campbell, Defendant Falco knew that Campbell had consumed an amount of alcohol that could be fatal.

357. Through his observations of and interactions with Campbell, Defendant Falco knew that Campbell had a serious medical need.

358. Defendant Falco had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if left untreated.

359. Defendant Falco's conduct toward Campbell included:

    a.   failing to provide medical treatment on his initial encounter with Campbell,

    b.   failing to comply with MBPD SOPs requiring him to transport Campbell for medical aid, and

    c.   leaving Campbell at the MBPD jail without providing medical care.

360. Defendant Falco's conduct, as described above, was not objectively reasonable given Defendant Falco's knowledge of Campbell's condition.

361. Defendant Falco's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

362. Defendant Falco's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

363. Defendant Falco was deliberately indifferent to Campbell's serious medical need.

364. Defendant Falco's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

**COUNT TWO: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)**
**Against Defendant Zackary White**

365. This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

366. This count is brought against Defendant White solely in his individual capacity.

367. At all times relevant, Defendant White was employed by the Myrtle Beach Police Department.

368. At all times relevant, Defendant White acted under color of state law.

369. Through his observations of and interactions with Campbell, Defendant White knew that Campbell had consumed an amount of alcohol that could be fatal.

370. Through his observations of and interactions with Mr. White, Defendant White knew that Campbell had a serious medical need.

371. Defendant White had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

372. Defendant White's conduct toward Campbell included:

    a. failing to provide medical treatment on his initial encounter with Campbell,

    b. failing to comply with MBPD SOPs requiring him to transport Campbell for medical aid, and

    c. assisting Defendant Falco in transporting Campbell to the MBPD jail without providing medical care,

373. Defendant White's conduct, as described above, was not objectively reasonable given Defendant White's knowledge of Campbell's condition.

374. Defendant White's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

375. Defendant White's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

376. Defendant White was deliberately indifferent to Campbell's serious medical need.

377. Defendant White's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

### COUNT THREE: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)
### Against Defendant Michael Nissan

378. This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

379. This count is brought against Defendant Nissan solely in his individual capacity.

380. At all times relevant, Defendant Nissan was employed by the Myrtle Beach Police Department.

381. At all times relevant, Defendant Nissan acted under color of state law.

382. Campbell consumed an amount of alcohol that put him at risk of serious injury or death.

383. Defendant Nissan had actual subjective knowledge of Campbell's condition through:

    a. his knowledge of the contents of Campbell's Arrest Report,

    b. his knowledge of Campbell's Booking Report,

    c. Campbell's statement to Mr. Nissan that Campbell had drunk seven Steel Reserves, and

    d. his observation of and interaction with Campbell during the booking process.

384. Defendant Nissan had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

385. Defendant Nissan had actual subjective knowledge that Campbell had consumed an amount of alcohol that could be fatal.

386. Defendant Nissan had actual subjective knowledge that Campbell had a serious medical need.

387. Defendant Nissan's conduct toward Campbell included:

    a.   failing to provide medical treatment on his initial encounter with Campbell outside of the MBPD Jail,

    b.   accepting Mr. Cambell into the MBPD Jail before Campbell was transported for medical aid, contrary to the requirements of MBPD SOP S-146,

    c.   accepting Mr. Cambell into the MBPD Jail without receiving written confirmation that Campbell was medically fit to be placed in jail, contrary to the requirements of MBPD SOP S-146,

    d.   disregarding the Alerts in Campbell's Booking Report;

    e.   escorting Campbell to a holding cell rather than an observation/medical area,

    f.   failing to provide medical care, and

    g.   failing to closely observe Campbell in the holding cell.

388.   Defendant Nissan's conduct, as described above, was not objectively reasonable given Defendant Nissan's knowledge of Campbell's condition.

389.   Defendant Nissan's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

390.   Defendant Nissan's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

391.   Defendant Nissan was deliberately indifferent to Campbell's serious medical need.

392.   Defendant Nissan's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

### COUNT FOUR: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)
### Against Defendant Heather Mitchell

393.   This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

33

394. This count is brought against Defendant Mitchell solely in his individual capacity.

395. At all times relevant, Defendant Mitchell was employed by the Myrtle Beach Police Department.

396. At all times relevant, Defendant Mitchell acted under color of state law.

397. Campbell consumed an amount of alcohol that put him at risk of serious injury or death.

398. Defendant Mitchell had actual subjective knowledge of Campbell's condition through:

    a. her knowledge of the contents of Campbell's Arrest Report,

    b. her completion of Campbell's Jail Medical Screening Report,

    c. her completion of Campbell's Booking Report, in which she noted "Medical" and "Observation" Alerts,

    d. her observation of and interaction with Campbell during the booking process.

399. Defendant Mitchell had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

400. Defendant Mitchell had actual subjective knowledge that Campbell had consumed an amount of alcohol that could be fatal.

401. Defendant Mitchell had actual subjective knowledge that Campbell had a serious medical need.

402. Defendant Mitchell's conduct toward Campbell included:

    a. failing to provide medical treatment on her initial encounter with Campbell at the MBPD Jail,

    b. accepting Mr. Cambell into the MBPD Jail before Campbell was transported for medical aid, contrary to the requirements of MBPD SOP S-146,

      c.   accepting Mr. Cambell into the MBPD Jail without receiving written confirmation that Campbell was medically fit to be placed in jail, contrary to the requirements of MBPD SOP S-146,

      d.   failing to ensure that officers complied with the Alerts in Campbell's Booking Report;

      e.   assigning or assisting with placing Campbell to a holding cell rather than an observation/medical area,

      f.   failing to provide medical care to Campbell while he was in the holding cell, and

      g.   failing to closely observe Campbell in the holding cell.

403.   Defendant Mitchell's conduct, as described above, was not objectively reasonable given Defendant Mitchell's knowledge of Campbell's condition.

404.   Defendant Mitchell's conduct, as described above, shows that she disregarded the risk of serious harm to Campbell if Campbell was left untreated.

405.   Defendant Mitchell's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

406.   Defendant Mitchell was deliberately indifferent to Campbell's serious medical need.

407.   Defendant Mitchell's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

**COUNT FIVE: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)**
**Against Defendant Nickolas Porzio Heard**

408.   This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

409.   This count is brought against Defendant Porzio Heard solely in his individual capacity.

410.   At all times relevant, Defendant Porzio Heard was employed by the Myrtle Beach Police Department.

411.   At all times relevant, Defendant Porzio Heard acted under color of state law.

412.   Campbell consumed an amount of alcohol that put him at risk of serious injury or death.

413.   Defendant Porzio Heard had actual subjective knowledge of Campbell's condition through:

    a.   his knowledge of the contents of Campbell's Arrest Report,

    b.   his knowledge of Campbell's Booking Report, and

    c.   his observation of and interaction with Campbell during the booking process.

414.   Defendant Porzio Heard had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

415.   Defendant Porzio Heard had actual subjective knowledge that Campbell had consumed an amount of alcohol that could be fatal.

416.   Defendant Porzio Heard had actual subjective knowledge that Campbell had a serious medical need.

417.   Defendant Porzio Heard's conduct toward Campbell included:

    a.   failing to provide medical treatment on his initial encounter with Campbell in the booking area of the MBPD Jail,

    b.   assisting with Mr. Cambell's acceptance into the MBPD Jail before Campbell was transported for medical aid, contrary to the requirements of MBPD SOP S-146,

    c.   assisting with Mr. Cambell's acceptance into the MBPD Jail without receiving written confirmation that Campbell was medically fit to be placed in jail, contrary to the requirements of MBPD SOP S-146,

    d.   disregarding the Alerts in Campbell's Booking Report;

    e.   failing to provide medical care to Campbell while he was in the holding cell, and

    f.   failing to closely observe Campbell in the holding cell.

418.   Defendant Porzio Heard's conduct, as described above, was not objectively reasonable given Defendant Nissan's knowledge of Campbell's condition.

419.   Defendant Porzio Heard's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

420.   Defendant Porzio Heard's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

421.   Defendant Porzio Heard was deliberately indifferent to Campbell's serious medical need.

422.   Defendant Porzio Heard's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

**COUNT SIX: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)**
**Against Defendant Albert Fletcher**

423.   This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

424.   This count is brought against Defendant Fletcher solely in his individual capacity.

425.   At all times relevant, Defendant Fletcher was employed by the Myrtle Beach Police Department.

426.   At all times relevant, Defendant Fletcher acted under color of state law.

427.   Campbell consumed an amount of alcohol that put him at risk of serious injury or death.

428.   Defendant Fletcher had actual subjective knowledge of Campbell's condition through:

    a.   his knowledge of the contents of Campbell's Arrest Report,

    b.   his knowledge of Campbell's Booking Report,

    c.   his observation of and interaction with Campbell during the booking process, and

      d.  his observation of and interaction with Campbell while he was in the holding cell.

429.  Defendant Fletcher had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

430.  Defendant Fletcher had actual subjective knowledge that Campbell had consumed an amount of alcohol that could be fatal.

431.  Defendant Fletcher had actual subjective knowledge that Campbell had a serious medical need.

432.  Defendant Fletcher's conduct toward Campbell included:

      a.  failing to provide medical treatment on his initial encounter with Campbell in the booking area of the MBPD Jail,

      b.  disregarding the Alerts in Campbell's Booking Report;

      c.  failing to provide medical care to Campbell while he was in the holding cell, and

      d.  failing to closely observe Campbell in the holding cell.

433.  Defendant Fletcher's conduct, as described above, was not objectively reasonable given Defendant Nissan's knowledge of Campbell's condition.

434.  Defendant Fletcher's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

435.  Defendant Fletcher's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

436.  Defendant Fletcher was deliberately indifferent to Campbell's serious medical need.

437.  Defendant Fletcher's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

**COUNT SEVEN: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)**
**Against Defendant Kelly Brewer**

438.    This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

439.    This count is brought against Defendant Brewer solely in his individual capacity.

440.    At all times relevant, Defendant Brewer was employed by the Myrtle Beach Police Department.

441.    At all times relevant, Defendant Brewer acted under color of state law.

442.    Campbell consumed an amount of alcohol that put him at risk of serious injury or death.

443.    Defendant Brewer had actual subjective knowledge of Campbell's condition through:

      a.  his knowledge of the contents of Campbell's Arrest Report,

      b.  his knowledge of Campbell's Booking Report, and

      c.  his observation of and interaction with Campbell while he was in the holding cell.

444.    Defendant Brewer had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

445.    Defendant Brewer had actual subjective knowledge that Campbell had consumed an amount of alcohol that could be fatal.

446.    Defendant Brewer had actual subjective knowledge that Campbell had a serious medical need.

447.    Defendant Brewer's conduct toward Campbell included:

      a.  disregarding the Alerts in Campbell's Booking Report;

      b.  failing to provide medical care to Campbell while he was in the holding cell, and

      c.  failing to closely observe Campbell in the holding cell.

448.   Defendant Brewer's conduct, as described above, was not objectively reasonable given Defendant Nissan's knowledge of Campbell's condition.

449.   Defendant Brewer's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

450.   Defendant Brewer's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

451.   Defendant Brewer was deliberately indifferent to Campbell's serious medical need.

452.   Defendant Brewer's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

## COUNT EIGHT: DELIBERATE INDIFFERENCE (28 U.S.C. § 1983)
### Against Defendant Christine Yencha

453.   This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

454.   This count is brought against Defendant Yencha solely in his individual capacity.

455.   At all times relevant, Defendant Yencha was employed by the Myrtle Beach Police Department.

456.   At all times relevant, Defendant Yencha acted under color of state law.

457.   Campbell consumed an amount of alcohol that put him at risk of serious injury or death.

458.   Defendant Yencha had actual subjective knowledge of Campbell's condition through:

    a.  her knowledge of the contents of Campbell's Arrest Report,

    b.  her knowledge of Campbell's Booking Report, and

    c.  her observation of and interaction with Campbell while he was in the holding cell.

459.   Defendant Yencha had actual subjective knowledge that the amount of alcohol consumed by Campbell put Campbell at risk of serious harm if he was left untreated.

460.    Defendant Yencha had actual subjective knowledge that Campbell had consumed an amount of alcohol that could be fatal.

461.    Defendant Yencha had actual subjective knowledge that Campbell had a serious medical need.

462.    Defendant Yencha's conduct toward Campbell included:

  a.   disregarding the Alerts in Campbell's Booking Report;

  b.   failing to provide medical care to Campbell while he was in the holding cell, and

  c.   failing to closely observe Campbell in the holding cell.

463.    Defendant Yencha's conduct, as described above, was not objectively reasonable given Defendant Nissan's knowledge of Campbell's condition.

464.    Defendant Yencha's conduct, as described above, shows that he disregarded the risk of serious harm to Campbell if Campbell was left untreated.

465.    Defendant Yencha's conduct, as described above, showed subjective recklessness toward Campbell's serious medical need.

466.    Defendant Yencha was deliberately indifferent to Campbell's serious medical need.

467.    Defendant Yencha's deliberate indifference to Campbell's serious medical need caused Campbell's death on October 20, 2022.

## COUNT NINE: *MONELL* LIABILITY (28 U.S.C. § 1983)
### Against Defendant Amy Prock

468.    This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

469.    This count is brought against Defendant Prock solely in her individual capacity.

470.    At all times relevant, Defendant Prock was employed by the Myrtle Beach Police Department as Chief of Police.

471.    At all times relevant, Defendant Prock acted under color of state law.

472.    As Chief of Police, Defendant Prock was responsible for ensuring that all individuals employed by MBPD complied with all MBPD SOPs.

473.    Defendant Prock failed to ensure that all individuals employed by MBPD complied with all MBPD SOPs.

474.    As Chief of Police, Defendant Prock was responsible for all customs of the MBPD, including:

      a.   taking intoxicated individuals to the MBPD Jail regardless of their level of intoxication;

      b.   putting intoxicated individuals into holding cells regardless of their level of intoxication;

      c.   taking intoxicated individuals to the MBPD Jail regardless of their demonstrated need for medical aid;

      d.   putting intoxicated individuals into a holding cell regardless of their demonstrated need for medical aid;

      e.   failing to comply with the requirements of SOP S–146 when handling intoxicated individuals;

      f.   denying medical care to intoxicated individuals even when such individuals had a "Medical Alert"; and

      g.   leaving intoxicated individuals in a holding cell even when such individuals were marked for "Observation".

475.    Defendant Prock was deliberately indifferent to the risk that the failure of MBPD employees working at the MBPD Jail to follow MBPD SOPs would lead to the violation of inmates' rights to medical care.

476.    Defendant Prock was deliberately indifferent to the risk that the customs of the MBPD Jail would lead to the violation of inmate's rights to medical care.

477.    Defendant Prock's deliberate indifference to the risk that inmates' rights would be violated caused the death of Campbell.

### COUNT TEN: *MONELL* LIABILITY (28 U.S.C. § 1983)
### Against Defendant Brian Murphy

478.    This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

479.    This count is brought against Defendant Murphy solely in his individual capacity.

480.    Defendant Murphy was, at all times relevant to this Complaint, a Captain charged with supervision of all individuals in the Detention Section of the Myrtle Beach Police Department.

481.    At all times relevant, Defendant Murphy acted under color of state law.

482.    As the Captain for MBPD's Detention Section, Defendant Murphy was responsible for ensuring that all individuals employed by MBPD complied with all MBPD SOPs.

483.    Defendant Murphy failed to ensure that all individuals employed by MBPD complied with all MBPD SOPs.

484.    As the Captain for MBPD's Detention Section, Defendant Murphy was responsible for all customs of the MBPD, including:

       a.    taking intoxicated individuals to the MBPD Jail regardless of their level of intoxication;

b.  putting intoxicated individuals into holding cells regardless of their level of intoxication;

c.  taking intoxicated individuals to the MBPD Jail regardless of their demonstrated need for medical aid;

d.  putting intoxicated individuals into a holding cell regardless of their demonstrated need for medical aid;

e.  failing to comply with the requirements of SOP S–146 when handling intoxicated individuals;

f.  denying medical care to intoxicated individuals even when such individuals had a "Medical Alert"; and

g.  leaving intoxicated individuals in a holding cell even when such individuals were marked for "Observation".

485.  Defendant Murphy was deliberately indifferent to the risk that the failure of MBPD employees working at the MBPD Jail to follow MBPD SOPs would lead to the violation of inmates' rights to medical care.

486.  Defendant Murphy was deliberately indifferent to the risk that the customs of the MBPD Jail would lead to the violation of inmate's rights to medical care.

487.  Defendant Murphy's deliberate indifference to the risk that inmates' rights would be violated caused the death of Campbell.

## COUNT ELEVEN: *MONELL* LIABILITY (28 U.S.C. § 1983)
### Against Defendant Seabrook Phillips

488.  This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

489.  This count is brought against Defendant Philips solely in his individual capacity.

44

490.   Defendant Seabrook Philips was, at all relevant times to this Complaint, the Lieutenant charged with supervision of all individuals working in MBPD's Detention Section.

491.   At all times relevant, Defendant Philips acted under color of state law.

492.   As the Lieutenant for MBPD's Detention Section, Defendant Philips was responsible for ensuring that all individuals employed by MBPD complied with all MBPD SOPs.

493.   Defendant Philips failed to ensure that all individuals employed by MBPD complied with all MBPD SOPs.

494.   As the Lieutenant for MBPD's Detention Section, Defendant Philips was responsible for all customs of the MBPD, including:

    a.   taking intoxicated individuals to the MBPD Jail regardless of their level of intoxication;

    b.   putting intoxicated individuals into holding cells regardless of their level of intoxication;

    c.   taking intoxicated individuals to the MBPD Jail regardless of their demonstrated need for medical aid;

    d.   putting intoxicated individuals into a holding cell regardless of their demonstrated need for medical aid;

    e.   failing to comply with the requirements of SOP S–146 when handling intoxicated individuals;

    f.   denying medical care to intoxicated individuals even when such individuals had a "Medical Alert"; and

    g.   leaving intoxicated individuals in a holding cell even when such individuals were marked for "Observation".

45

495.    Defendant Philips was deliberately indifferent to the risk that the failure of MBPD employees working at the MBPD Jail to follow MBPD SOPs would lead to the violation of inmates' rights to medical care.

496.    Defendant Philips was deliberately indifferent to the risk that the customs of the MBPD Jail would lead to the violation of inmate's rights to medical care.

497.    Defendant Philips's deliberate indifference to the risk that inmates' rights would be violated caused the death of Campbell.

### COUNT TWELVE: FAILURE TO TRAIN (42 U.S.C. § 1983)
### Against Defendant Amy Prock

498.    Plaintiff hereby incorporates all preceding paragraphs as if restated verbatim.

499.    This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

500.    This count is brought against Defendant Prock solely in her individual capacity.

501.    At all times relevant, Defendant Prock was employed by the Myrtle Beach Police Department as Chief of Police.

502.    At all times relevant, Defendant Prock acted under color of state law.

503.    As Chief of Police, Defendant Prock was responsible for the training of all individuals employed by MBPD.

504.    MBPD officers regularly arrested individuals for public intoxication.

505.    MBPD officers regularly took custody of intoxicated individuals.

506.    In light of the frequency with which employees of MBPD interacted with intoxicated individuals, the need for training on handling severely intoxicated individuals was obvious.

507.    Defendant Prock did not issue a written policy governing the handling of severely intoxicated individuals at the MBPD Jail.

508. Defendant Prock failed to provide training to MBPD officers working at the MBPD Jail related to the handling of severely intoxicated individuals.

509. Defendant Prock failed to provide training to individuals working at the MBPD Jail on the handling of severely intoxicated individuals.

510. Defendant Prock failed to ensure that all individuals responsible for booking at the MBPD Jail were officers trained in the handling of severely intoxicated individuals.

511. Defendant Prock failed to provide training to Defendant Mitchell on handling intoxicated persons.

512. Defendant Prock failed to provide training to Defendant Yencha on handling intoxicated persons.

513. Defendant Prock's failure to provide training on the handling of severely intoxicated individuals was the result of her deliberate indifference to the rights of individuals brought into the MBPD Jail.

514. Adequately trained officers would have sought immediate medical care for Campbell rather than bringing him to the MBPD Jail.

515. Adequately trained individuals at the MBPD Jail would have sought immediate medical care for Campbell after he was brought to the MBPD Jail.

516. Defendant Prock's deliberate indifference to the need for training its officers on handling intoxicated individuals caused Campbell's death on October 20, 2022.

### COUNT TWELVE: FAILURE TO TRAIN (42 U.S.C. § 1983)
### Against Defendant Brian Murphy

517. Plaintiff hereby incorporates all preceding paragraphs as if restated verbatim.

518. This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

519. This count is brought against Defendant Murphy solely in his individual capacity.

520. Defendant Murphy was, at all times relevant to this Complaint, a Captain charged with supervision of all individuals in the Detention Section of the Myrtle Beach Police Department.

521. At all times relevant, Defendant Murphy acted under color of state law.

522. As the Captain for MBPD's Detention Section, Defendant Murphy was responsible for the training of all individuals employed by MBPD.

523. MBPD officers regularly arrested individuals for public intoxication.

524. MBPD officers regularly took custody of intoxicated individuals.

525. In light of the frequency with which employees of MBPD interacted with intoxicated individuals, the need for training on handling severely intoxicated individuals was obvious.

526. Defendant Murphy did not issue a written policy governing the handling of severely intoxicated individuals at the MBPD Jail.

527. Defendant Murphy failed to provide training to MBPD officers working at the MBPD Jail related to the handling of severely intoxicated individuals.

528. Defendant Murphy failed to provide training to individuals working at the MBPD Jail on the handling of severely intoxicated individuals.

529. Defendant Murphy failed to ensure that all individuals responsible for booking at the MBPD Jail were officers trained in the handling of severely intoxicated individuals.

530. Defendant Murphy failed to provide training to Defendant Mitchell on handling intoxicated persons.

531. Defendant Murphy failed to provide training to Defendant Yencha on handling intoxicated persons.

532.    Defendant Murphy's failure to provide training on the handling of severely intoxicated individuals was the result of her deliberate indifference to the rights of individuals brought into the MBPD Jail.

533.    Adequately trained officers would have sought immediate medical care for Campbell rather than bringing him to the MBPD Jail.

534.    Adequately trained individuals at the MBPD Jail would have sought immediate medical care for Campbell after he was brought to the MBPD Jail.

535.    Defendant Murphy's deliberate indifference to the need for training its officers on handling intoxicated individuals caused Campbell's death on October 20, 2022.

### COUNT TWELVE: FAILURE TO TRAIN (42 U.S.C. § 1983)
### Against Defendant Seabrook Phillips

536.    Plaintiff hereby incorporates all preceding paragraphs as if restated verbatim.

537.    This count is brought pursuant to 28 U.S.C. § 1983 for violations of Campbell's rights under the Fourteenth Amendment to the United States Constitution.

538.    This count is brought against Defendant Phillips solely in his individual capacity.

539.    Defendant Phillips was, at all times relevant to this Complaint, a Captain charged with supervision of all individuals in the Detention Section of the Myrtle Beach Police Department.

540.    At all times relevant, Defendant Phillips acted under color of state law.

541.    As the Lieutenant for MBPD's Detention Section, Defendant Phillips was responsible for the training of all individuals employed by MBPD.

542.    MBPD officers regularly arrested individuals for public intoxication.

543.    MBPD officers regularly took custody of intoxicated individuals.

544.    In light of the frequency with which employees of MBPD interacted with intoxicated individuals, the need for training on handling severely intoxicated individuals was obvious.

49

545.     Defendant Phillips did not issue a written policy governing the handling of severely intoxicated individuals at the MBPD Jail.

546.     Defendant Phillips failed to provide training to MBPD officers working at the MBPD Jail related to the handling of severely intoxicated individuals.

547.     Defendant Phillips failed to provide training to individuals working at the MBPD Jail on the handling of severely intoxicated individuals.

548.     Defendant Phillips failed to ensure that all individuals responsible for booking at the MBPD Jail were officers trained in the handling of severely intoxicated individuals.

549.     Defendant Phillips failed to provide training to Defendant Mitchell on handling intoxicated persons.

550.     Defendant Phillips failed to provide training to Defendant Yencha on handling intoxicated persons.

551.     Defendant Phillips's failure to provide training on the handling of severely intoxicated individuals was the result of her deliberate indifference to the rights of individuals brought into the MBPD Jail.

552.     Adequately trained officers would have sought immediate medical care for Campbell rather than bringing him to the MBPD Jail.

553.     Adequately trained individuals at the MBPD Jail would have sought immediate medical care for Campbell after he was brought to the MBPD Jail.

554.     Defendant Phillips's deliberate indifference to the need for training its officers on handling intoxicated individuals caused Campbell's death on October 20, 2022.

## COUNT THIRTEEN: SURVIVAL ACTION

555.     Pursuant to S.C. Code § 15-5-90, Plaintiff brings this statutory survival action as Personal Representative of the Estate of Brandon William Campbell to recover for any and all injuries that the Defendants caused to the Decedent.

556.     Each Defendant owed one or more duties of care to the decedent, including those set forth above in the foregoing paragraphs, and those that will be shown through discovery and at trial.

557.     Each Defendant breached its duties of care in a negligent, grossly negligent, and reckless manner, in some or all of the ways described above, and in such other ways as will be shown through discovery and at trial.

558.     As a direct and proximate result of the acts and omissions of the Defendants, the decedent suffered damages, in that he experienced conscious pain and suffering before his death.

559.     The Personal Representative is therefore informed and believes that the Estate is entitled to judgment against the Defendants for actual and punitive damages for the decedent's pain and suffering before death.

## COUNT FOURTEEN:  WRONGFUL DEATH

560.     The Plaintiff repeats the foregoing allegations as if repeated here, verbatim.

561.     The Plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

562.     Each Defendant owed the decedent one or more duties of care as described above in the foregoing paragraphs, and as will be shown through discovery and at trial.

563.     The Defendants negligently and recklessly breached one or more of their duties to the decedent as set forth above, and as will be shown through discovery and at trial.

564.     As a direct and proximate result of the Defendants' breaches, the Decedent was violently killed.

565.    The Plaintiff is therefore informed and believes that the Estate is entitled to judgment against the Defendants for actual and punitive damages for the Decedent's wrongful death.

566.    As the above-described incidents involve numerous separate acts and/or omissions pertaining to the abuse and failure to train, supervise, and/or terminate the employment of numerous individuals who committed the acts and/or omissions, the Plaintiffs have alleged multiple "occurrences" pursuant to *Chastain v. AnMed Health Found.*, 388 S.C. 170 (2010) and *Boiter v. SCDOT*, 393 S.C. 123 (2011) for the purposes of calculating the applicable damages cap, if any. Plaintiff request that the number of occurrences be determined by the jury.

**WHEREFORE**, Plaintiff prays:

A.  That all actual and consequential damages, including damages for emotional distress, pain and suffering, be awarded to Plaintiff in an amount determined according to evidence presented at trial;

B.  That special damages be awarded in an amount to be determined at trial;

C.  That punitive damages be awarded against Defendants when allowable by law in an amount to be determined at trial;

D.  That a trial by jury be had on all issues permitted;

E.  That attorneys' fees and expenses of litigation be awarded as authorized under the law; and

F.  Such other further equitable or monetary relief as the Court deems just and proper.


[signature on next page]


52

Dated: October 18, 2024

Respectfully submitted,

THE MELONAKOS LAW FIRM
1310 Augusta Street
Greenville, SC  29605
864-485-5555
864-752-1600 (Fax)
ryan@scinjuryattorney.com
mike@scinjuryattorney.com

s/ Ryan P. Alderson
Ryan P. Alderson, Esq.
SC Bar No. 103126
Michael Melonakos, Esq..
SC Bar No. 100387
*Attorneys for Plaintiff*

*To be admitted Pro Hac Vice:*

**HALL & LAMPROS, LLP**

Andrew Lampros
Ga. Bar #432328
300 Galleria Pkwy SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
ricardo@hallandlampros.com
alampros@hallandlampros.com
*Attorneys for Plaintiff*